UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  22-CV-80315-CANNON/REINHART

PATRICK J.P. LEACH,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 20, 21]

This matter is before the Court on cross motions for summary judgment filed by *pro se* Plaintiff Patrick J.P. Leach ("Plaintiff" or "Mr. Leach") (ECF No. 20), and Defendant Commissioner of the Social Security Administration ("Defendant" or "Commissioner") (ECF No. 21). I have reviewed the motions for summary judgment and Mr. Leach's reply (ECF No. 24). Under the limited standard of review that governs this case, I find that the motions are ripe for disposition. For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 20) should be **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 21) should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

## BACKGROUND

On August 21, 2014, Mr. Leach filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging a disability

beginning October 8, 2008, due to "injuries from multiple gunshot wounds." R. 2464, 306–13, 326.[1] At the time of the alleged onset of his disability, Mr. Leach was 26 years old. R. 306, 312. Based on Mr. Leach's earnings record, he had sufficient quarters of coverage to remain insured through September 30, 2009 ("date last insured" or "DLI"). R. 2465.

Initially, Administrative Law Judge ("ALJ") Deborah J. Van Vleck presided over Mr. Leach's case. R. 22–40. After holding a hearing, ALJ Van Vleck issued an unfavorable decision on February 3, 2017 (the "Initial ALJ Decision"). *Id*. The Appeals Council denied review of the Initial ALJ Decision and Mr. Leach appealed the decision in federal court. R. 1–4. On July 24, 2019, the Court reversed and remanded the case to the Commissioner ("Court Remand Order"). R. 2696–2702. The Court found that ALJ Van Vleck "deliberately invoked the felony-related-impairment exclusion without laying out the proper evidentiary support or rationale."[2] R. 2702. The Court specifically instructed the Commissioner to "further develop the record concerning any felony-related impairments, offer a clear rationale regarding how any such impairments factor into the overall disability decision, and take such other

---

[1] Citations preceded by "R." are to the administrative record filed at ECF Nos. 16–17.
[2] The felony-related impairment exclusion is a Social Security Regulation that provides in relevant part: "In determining whether you are under a disability, we will not consider any physical or mental impairment, or any increase in severity (aggravation) of a preexisting impairment, which arises in connection with your commission of a felony after October 19, 1980, if you are subsequently convicted of this crime. Your subsequent conviction will invalidate any prior determination establishing disability if that determination was based upon any impairment, or aggravation, which we must exclude under this rule." 20 C.F.R. § 404.1506(a).

action as may be necessary to properly resolve this matter." *Id.* Thereafter, the Appeals Council issued a separate remand order requiring an ALJ to conduct further proceedings "consistent with the order of the court" and "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision" ("Appeals Council Remand Order"). R. 2658–61.

Notably, Mr. Leach filed a second application for SSI benefits on January 19, 2018 ("Second Application for SSI"), while the appeal regarding his first application was still pending before the Court. R. 2465. Mr. Leach's Second Application for SSI resulted in a finding that he was disabled as of the application date, but that he did not qualify for SSI benefits for financial reasons. *Id.* In light of this second ruling, the Appeals Council Remand Order clarified that the relevant time period before the new ALJ on remand would be limited to January 19, 2018, and prior, unless the Second Application for SSI determination was reopened and revised. R. 2660.

On August 25, 2020, ALJ Jose Perez-Gonzalez held a new hearing for Mr. Leach. R. 2493–2587, 2464. Mr. Leach was represented by counsel at the hearing. R. 2495. On October 7, 2020, the ALJ once again denied Mr. Leach's application for SSI and DIB. R. 2464–83. The ALJ noted that he found no reason to reopen or revise the January 19, 2018, decision on Mr. Leach's Second SSI Application, and clarified that his decision focused on two distinct periods: October 8, 2008, to September 30, 2009, for Mr. Leach's DIB claim ("DIB Period") and August 21, 2014, to January 18, 2018, for Mr. Leach's SSI claim ("SSI Period") (collectively the "Relevant Periods").

3

R. 2465. The ALJ also noted that he did not invoke the felony-related impairment exclusion. R. 2464. Instead, he "fully considered all of [Mr. Leach's] impairments and their effects on [his] functioning in proceeding through the sequential evaluation process." *Id.*

On October 27, 2020, Mr. Leach submitted written exceptions to the Appeals Council, generally disagreeing with the ALJ's decision, and requested an extension of time to submit specific exceptions. R. 2443, 2739. The Appeals Council granted Mr. Leach's request and extended the time for specific exceptions until October 1, 2021. R. 2443, 2453. On October 13, 2021, nearly two weeks after the deadline, Mr. Leach requested another extension of time, allegedly due to his attorney's withdrawal from representation several months prior. R. 2443, 2448–50. The Appeals Council denied the request for an additional extension as untimely and stated that it would only consider the exceptions previously submitted. R. 2443. On November 12, 2021, the Appeals Council denied Mr. Leach's request for review, rendering the ALJ's October 7, 2020, decision the "final decision." R. 2443–45.

The record evidence before the ALJ consisted of: Mr. Leach's medical records, the testimony of two impartial medical experts (Haddon Alexander III, M.D. and Olin Hamrick, Jr., PhD), the testimony of Mr. Leach, and the testimony of an impartial vocational expert, Lorin Lovely (the "VE"). R. 2493–2587. Because the ALJ's decision and the Commissioner's Motion for Summary Judgment adequately summarize Mr. Leach's medical records and the testimony of the two medical experts, those facts are not repeated here.

4

### *Mr. Leach's Testimony*

At the time of the second hearing on August 25, 2020, Mr. Leach was 38 years old. R. 2557. Mr. Leach testified that he had been living with his grandmother in Lake Worth, Florida, since 2014, when he was released from prison. R. 2557–60, 2581. Mr. Leach earned a high school equivalency degree (GED) and has some college experience. R. 2558.

As to work experience, Mr. Leach testified that in 2008 he worked at Homeboy Trucking as a truck mechanic trainee, where he "work[ed] on trucks, pick[ed] up parts, [did] maintenance on trucks," and performed "a lot of heavy lifting" of tires and other truck parts. R. 2561–64. Prior to that, Mr. Leach testified that he worked for Neighborhood Auto Sales as a used car salesman from 2000 to 2006. R. 2564–66. Mr. Leach testified that he has not worked since 2009. R. 2561.

Mr. Leach testified that on October 8, 2008, he was shot multiple times, including in his left eye, "through [his] face," "out the right side of [his] neck after bouncing out the right side of [his] jaw," and in his right shoulder, where a bullet is "still lodged in [his] body to this day." R. 2513. Largely as a result of the incident, Mr. Leach alleges that he suffers from multiple physical and mental impairments. R. 2566–67. Specifically, during the DIB Period, Mr. Leach testified that he suffered from the following physical impairments: blindness in his left eye, light sensitivity in his right eye, chronic migraines and headaches, right shoulder pain, recurring cold sweats, lower back pain, asthma, hemorrhoids, jaw pain, neck pain, face pain, and inability to sleep. R. 2566–72. During the SSI Period, Mr. Leach testified that he

5

additionally suffered from right knee pain, foot pain, numbness in his hands and feet, wrist pain, and blockage in one nostril. R. 2572–74. As to mental impairments, Mr. Leach testified that he suffered from post-traumatic stress disorder ("PTSD") following the incident, including "having a lot of flashbacks," "seeing shadows," and "hearing voices and gunshots," fear, and inability to sleep—all of which continued through both the DIB and SSI Periods. R. 2574–76.

As to daily activities, Mr. Leach testified that apart from "going to get [his] medication or going to [his] medical appointments, [he] really don't [sic.] do too much[.]" R. 2549. Mr. Leach added that he "don't [sic.] like people," and "that's why [he] don't [sic.] really go nowhere." R. 2578. Mr. Leach further testified that although he does not like to drive, he does drive frequently, including on the day of the hearing. R. 2547–48. Finally, as to medications, Mr. Leach testified that he takes "[t]he Seroquel, the mirtazapine, and the prazosin," for his mental impairments. R. 2543.

### *Vocational Expert Testimony*

The VE classified Mr. Leach's past relevant work as a Used Auto Salesperson, DOT 273.353-010, with a light exertional level and an SVP of 6, and a Truck Mechanic Helper, DOT 620.684-014, with a heavy exertional level and an SVP of 3. R. 2581–82. The ALJ then posed two hypotheticals to the VE. R. 2581–84. First, the ALJ asked the VE whether Mr. Leach could perform his past relevant work if he had the following limitations:

> [He] can lift and/or carry 50 pounds occasionally, 25 pounds frequently,
> can sit for six hours per an eight-hour workday, [and] stand and walk
> six hours per an eight-hour workday. . . [H]e should never climb ladders,

> ropes and scaffolds.  [H]e can frequently climb stairs and ramps.  He can frequently balance, stoop, kneel, crouch or crawl [and should] also avoid unprotected heights . . . [H]e has no depth perception in left eye. . . [He] can perform simple, routine, competitive, low stress, repetitive tasks on a sustained basis over a normal eight-hour workday, in a stable work environment with no more than simple decision making required, occasional close interpersonal interactions with coworkers, occasional interaction with the public, and I believe also supervisors . . . [b]ut he is unable to perform complex and detailed tasks, or to meet fast paced, high production demands.  He should have only occasional changes in the work routine, and he'd work better with things rather than people.

R. 2582–83. The VE responded that Mr. Leach could not perform his past work if he had the identified limitations. R. 2584. For the second hypothetical, the ALJ asked the VE if Mr. Leach could perform his past relevant work given the same functional abilities as the first hypothetical, with the additional limitation that he could only lift and/or carry 20 pounds occasionally and 10 pounds frequently. R. 2582–83. The VE responded that Mr. Leach could not perform his past work if he had the identified limitations. R. 2584.

Finally, the ALJ asked the VE whether, given the limitations presented in the two hypotheticals, Mr. Leach could perform any other jobs in the national economy. *Id.* The VE responded that Mr. Leach would be able to perform jobs, including but not limited to, Housekeeper, DOT 323.687-014, with a light exertional level and an SVP of 2; Flower Picker, DOT 405.687-010, with a light exertional level and an SVP of 1; and Ironer, Domestic, DOT 302.687-010, with a light exertional level and an SVP of 2. *Id.* The VE testified that there are approximately 102,000 Housekeeper positions, 65,000 Flower Picker positions, and 102,000 Domestic Ironer positions in the national economy. *Id.*

7

<u>**STANDARD OF REVIEW**</u>

This Court's review of the factual findings in disability cases is limited to evaluating whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520(c)). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

<u>**DISCUSSION**</u>

"*Pro se* pleadings 'are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' This leniency 'does not give a court license to serve as *de facto* counsel for a party' or to 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Smith v. Comm'r of Soc. Sec. Admin.*, No. 21-cv-14442, 2023 WL 361424, at *5 (S.D. Fla. Jan. 5, 2023) (J. Maynard)

(quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021)), *report and recommendation adopted*, 2023 WL 356279 (S.D. Fla. Jan. 23, 2023) (J. Cannon).

Liberally construing Mr. Leach's *pro se* pleading, I find that he presents two distinct challenges: (1) whether the ALJ adequately considered all available medical evidence in his decision (*i.e.*, whether the ALJ's decision is supported by substantial evidence); and (2) whether the Appeals Council improperly declined to review the ALJ's decision. While Mr. Leach additionally seeks to challenge the Initial ALJ Decision, that challenge is not properly before this Court. *See* ECF No. 20 at 3. Because the Appeals Council has already vacated the Initial ALJ Decision, there is nothing left for this Court to review. R. 2660–61; *see Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870, 871 (11th Cir. 2019) ("A vacated opinion has 'no legal effect whatever. [It is] void.' [] 'None of the statements made [therein] ha[ve] any remaining force.'") (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)).

## I.   The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove that his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic

work activities. . .” *Id.* Third, the ALJ must determine whether the claimant has an impairment that meets or is medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (the “Listings”). *Id.* If the ALJ answers step three in the affirmative, the claimant is found to be disabled. *Id.* If the ALJ answers step three in the negative, the inquiry continues to step four. *Id.*

Before considering step four, however, the ALJ must determine the claimant's Residual Functional Capacity (“RFC”), meaning his “ability to meet the physical, mental, sensory, and other requirements of work,” despite limitations from his impairments. *Id.*; 20 C.F.R. § 404.1545(a)(1), (4). At step four, the claimant must prove that, given his RFC, he cannot perform his past relevant work. 20 C.F.R. § 404.1520. If the claimant is successful at the fourth step, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he is capable of performing other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1560. If the Commissioner successfully shows that the claimant can perform such work, the claimant is determined not to be disabled. 20 C.F.R. § 404.1520.

## II.  The ALJ's Findings

Here, the ALJ proceeded through the five-step analysis as follows.[3] At step one, the ALJ found that Mr. Leach had not engaged in substantial gainful activity from

---

[3] To the extent Mr. Leach argues the ALJ did not proceed through the sequential evaluation process, that argument is without merit. *See* ECF No. 20 at 6.

October 8, 2008, the alleged onset date, through January 19, 2018. R. 2467. At step two, the ALJ found that Mr. Leach had the following severe impairments through January 18, 2018: "status post gunshot wounds to eye, neck, jaw and shoulder; loss of vision left eye; status post fracture of right mandible due to gunshot; status post surgical repair of fractured mandible; osteomyelitis status post surgery to right mandible (mandible repaired successfully); obesity; bipolar disorder; pain disorder associated with both psychological factors and general medical condition; antisocial personality disorder; and PTSD." R. 2467–68. The ALJ also found that Mr. Leach had the following non-severe impairments: hemorrhoids, carpal tunnel syndrome, some lower extremity neuropathy, and asthma. R. 2468–69. At step three, the ALJ found that Mr. Leach "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in [the Listings] through January 18, 2018".[4] R. 2469.

Before proceeding to step four, the ALJ formulated Mr. Leach's RFC. R. 2471–72. The ALJ found that from October 8, 2008, to September 30, 2009 (the DIB Period),

---

[4] The ALJ considered Mr. Leach's mental functioning using the Paragraph B criteria in the Listings and concluded that while Mr. Leach's bipolar disorder, pain disorder associated with both psychological factors and general medical condition, antisocial personality disorder, and PTSD constituted severe impairments, they did not meet or medically equal the criteria of Listings 12.04, 12.07, 12.08, and 12.15, considered singly or in combination, because his mental impairments did not cause at least two "marked" limitations or one "extreme" limitation in a broad area of functioning. R. 2469–71. The ALJ found that Mr. Leach had moderate limitations, through January 18, 2018, in each of the four areas of mental functioning listed in Paragraph B. *Id.* The ALJ also considered whether the Paragraph C criteria were satisfied and concluded that they were not. R. 2471.

Mr. Leach was able to perform medium work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the following limitations:

> [Mr. Leach could] lift and/or carry 50 pounds occasionally, [and] 25 pounds frequently. He could stand and walk for a total of 6 hours per an 8-hour workday. He could sit a total of 6 hours per an 8-hour workday. He could frequently climb stairs and ramps, balance, stoop, kneel, crouch and crawl. He could never climb ladders, ropes, and scaffolds. He had to avoid all exposure to unprotected heights. He lacked depth perception on the left side. He could perform simple routine, competitive, low stress, repetitive tasks on a sustained basis over an 8 hour work day, in a stable work environment, with no more than simple decision-making required, occasional close interpersonal interactions with coworkers, occasional interaction with supervisors and with the public, but was unable to perform complex and detailed tasks or to meet fast-paced, high production demands. [He] could be subject to only occasional adaptation to changes. He worked better with things rather than people.

R. 2471. For the SSI Period, from August 21, 2014, through January 18, 2018, the ALJ found that Mr. Leach was able to perform light work,[5] with the same limitations as outlined above, and the additional limitation that Mr. Leach could only lift and/or carry 20 pounds occasionally and 10 pounds frequently. R. 2471–72.

At step four, the ALJ found that Mr. Leach was unable to perform any past relevant work during the Relevant Periods, given his RFC. R. 2482. However, at step five, the ALJ found that Mr. Leach could, given his age, education, work experience,

---

[5] Although the ALJ did not specify that Mr. Leach's RFC during the SSI Period was limited to light work when discussing Mr. Leach's additional limitations, the ALJ's decision makes clear that he found that Mr. Leach was limited to light work during this time. *See, e.g.*, R. 2476 ("[G]iven the claimant's various impairments, a limitation to light work is more appropriate for the period from August 21, 2014 to January 18, 2018").

and RFC, perform other jobs that existed in the national economy. *Id.* The ALJ cited to the positions of Housekeeper, Flower Picker, and Ironer, Domestic, as examples of jobs within Mr. Leach's ability, each of which existed in significant numbers in the national economy. R. 2482–83. Accordingly, the ALJ concluded that Mr. Leach has not been under a disability from October 8, 2008, through the date of the ALJ's decision. R. 2483.

## III.  Whether the ALJ's Decision Is Supported by Substantial Evidence

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  I am not convinced that either situation is present here and so there is no basis for reversing the ALJ's decision.

Mr. Leach argues that the ALJ both "disregard[ed] evidence favorable to [his] case," and gave little or no weight to other evidence, while "fail[ing] to provide any reasoning for doing so, which constitutes an abuse of discretion on the ALJ's part." ECF No. 20 at 5. Specifically, Mr. Leach argues that the ALJ failed to properly consider evidence of: (1) "multiple bilateral knee injections and epidural lower back injections for spinal stenosis/herniated disc"; (2) records of a "handicapped parking tag for a neurological condition, stating that [Mr. Leach] could not walk for more than 200 feet without suffering pain"; (3) "evidence from [his] medical providers and his multiple pain management referrals from CL Brumback"; (4) evidence regarding "his asthma diagnosis wherein he was prescribed two (02) inhalers and a nebulizer

machine"; (5) "evidence concerning [his] weekly visits to various medical providers"; (6) his "bilateral wrist diagnosis"; (7) his "photophobia diagnosis"; (8) his "opthamology prescription for corrective eye lenses"; (9) "findings from ear, mouth & nose specialists detailing nasal blockage"; and (10) the fact that Mr. Leach "undertook evaluation at Corporate Boulevard Northwest" for vocational assistance. *Id.* at 4–5. Mr. Leach does not explain what functional limitations, if any, would result from the ALJ's consideration of this "evidence," or how the ALJ's analysis at any step should have been adjusted to account for such limitations.

As an initial matter, while Mr. Leach points to broad categories of "evidence" he claims the ALJ either failed to consider or failed to afford sufficient weight, he does not provide *any* record citations as support. *Id.* at 2–5. Mr. Leach's failure to cite to the record is in contravention of both Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) and this Court's Scheduling Order. *See* Supplemental Rule 5 ("The action is presented for decision by the parties' briefs. A brief must support assertions of fact by citations to particular parts of the record."); ECF No. 19 ("Plaintiff shall file a motion for summary judgment setting forth the reasons for relief and *including citations to the administrative record* and relevant legal authorities") (emphasis added).

While the Court notes that Mr. Leach is proceeding *pro se* in this action, the Court cannot "'serve as *de facto* counsel for a party' or [] 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Smith*, 2023 WL 361424, at *5 (J. Maynard) (quoting *Tannenbaum*, 148 F.3d at 1263; *Curtiss*, 856 F. App'x at 276).

This proves especially true herein, where the Court has independently reviewed the record and has found not only that some of the allegedly overlooked categories of evidence were specifically referenced in the ALJ's decision (*see, e.g.,* R. 2475 (citing CL Brumback records), 873 (records cited)), but also that some categories of evidence are not found in the record at all. For instance, while a review of the record shows that Mr. Leach presented subjective complaints of knee pain in 2017 and 2020 (*see, e.g.,* R. 70–71, 77–79, 2622, 2627), it revealed nothing reflecting "multiple bilateral knee injections," as Mr. Leach summarily states in his motion. Similarly, while the record reflects cortisol injections in Mr. Leach's right shoulder (*see, e.g.,* R. 168), cortisone injections in both wrists (*see, e.g.,* R. 2635–37, 2642–44), and anal botox injections (*see, e.g.,* R. 991, 993, 1144, 1174, 1177, 1180, 1182, 1201), it does not reflect epidural lower back injections as Mr. Leach alleges. The same is true of Mr. Leach's evidence of "nasal blockage," as Mr. Leach raised the issue to the ALJ but did not identify when or where he visited a medical provider, and no other evidence exists in the record to support his contention. R. 2573 ("I went to the ear and mouth specialist and he – and, you know, he confirmed that my right – one of my sides of my nostrils completely blocked"). Where evidence is not presented to the ALJ, the ALJ cannot be said to err in failing to review it.

Further, even assuming the documents referenced by Mr. Leach were in the record before the ALJ, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that

the ALJ considered [his] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (internal quotations and brackets omitted) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The relevant inquiry is not whether the ALJ cited each piece of evidence in his decision, but rather whether he evaluated Mr. Leach's "entire medical condition, including any impairment or combination of impairments, whether severe or not." *Childers v. Soc. Sec. Admin., Comm'r*, 521 F. App'x 809, 811 (11th Cir. 2013). The Court additionally may not reweigh the evidence nor substitute its judgment for that of the ALJ. *See Dyer*, 395 F.3d at 1210. Thus, Mr. Leach's contention that the ALJ should have given more weight to any evidence is not for this Court to decide, so long as the decision itself was supported by substantial evidence.[6]

To the extent Mr. Leach argues that the ALJ failed to consider any of his impairments as a whole, the Court finds that argument to be without merit. Indeed, the ALJ found that Mr. Leach suffered from the severe impairment of "pain disorder associated with both psychological factors and general medical condition" and the non-severe impairment of "lower extremity neuropathy," to which five of Mr. Leach's ten asserted categories of evidence would be potentially relevant (*i.e.,* injections for

---

[6] The Court finds that the ALJ did provide adequate explanations where any evidence was given little weight or discredited. *See, e.g.,* R. 2468 ("The undersigned affords some weight to the restriction upon sitting to the extent that it pertains to the temporary period of recovery following the claimant's perineal surgeries and is consistent with Dr. Ross' November 2015 verification of no activity restrictions."); 2476 ("These opinions are given some weight because they are generally consistent with the opinion of Dr. Alexander, as well as the evidence of record identified in addressing Dr. Alexander's opinion.").

16

pain, handicapped parking tag, pain management referrals, evidence from weekly doctor visits, and bilateral wrist pain); that Mr. Leach suffered from the severe impairments of "status post gunshot wounds to eye," and "loss of vision left eye," to which two of his asserted categories of evidence would be potentially relevant (*i.e.,* photophobia and corrective lenses); and that Mr. Leach suffered from the non-severe impairment of asthma, to which two of his asserted categories would potentially be relevant (*i.e.,* his asthma diagnosis and his nasal blockage). R. 2467–69. As such, the Court concludes that the ALJ did account for each of Mr. Leach's impairments in his decision.[7]

Finally, to the extent that Mr. Leach argues that the ALJ decision is invalid for failure to follow the Court Remand Order, that argument, too, is without merit. As required by the Court Remand Order, the ALJ further developed the record concerning any felony-related impairments (*see, e.g.,* R. 2510–12), clearly stated that he was *not* invoking the felony-impairment exclusion (R. 2464), and analyzed Mr. Leach's impairments and their effects on his functioning to assess whether Mr. Leach

---

[7] Mr. Leach further contends that he "undertook evaluation at Corporate Boulevard Northwest" for vocational assistance, which is both inconsistent with his hearing testimony and irrelevant to any of his impairments. ECF No. 20 at 5; R. at 2541. Nevertheless, I find that any factual mistake the ALJ made on this point is harmless given the other evidence in the record regarding Mr. Leach's capabilities and limitations. *See Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) ("Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

was disabled during the Relevant Periods. R. 2464–83. Insofar as Mr. Leach is arguing that the ALJ demonstrated bias by denying his application after remand, that argument fails because "an unfavorable judicial decision is not indicative of bias without other evidence of bias," and Mr. Leach has not provided any such evidence. *Meade v. Comm'r of Soc. Sec.*, F. App'x 942, 945 (11th Cir. 2020) (citing *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Having reviewed Mr. Leach's medical records, the hearing testimony, and the ALJ's decision, the Court finds that the ALJ's decision is supported by substantial evidence. The ALJ, as required, did consider Mr. Leach's entire medical condition, including all impairments and combinations of impairments, whether severe or not. *See Smith*, 2023 WL 361424, at *5 (citing *Childers*, 521 F. App'x at 811 (as part of the governing sequential evaluation process, the ALJ "is to consider the claimant's entire medical condition, including any impairment or combination of impairments, whether severe or not")).

## IV. Whether the Appeals Council Improperly Declined Review of the ALJ's Decision

"The Appeals Council has the discretion not to review the ALJ's denial of benefits." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (citing 20 C.F.R. § 416.1470(b)). However, "the Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits." *Id.* (citing *Ingram*, 496 F.3d at 1261; 20 C.F.R. §§ 404.970(b), 416.1470(b)). "[A] decision of the Social Security Appeals Council not to consider new evidence is a legal question

that is reviewed *de novo.*" *Suarez v. Kijakazi*, No. 22-cv-21947, 2023 WL 7129987, at *6 (S.D. Fla. Sept. 27, 2023) (J. Sanchez) (citing *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1060 (11th Cir. 2021) ("We review de novo the Appeals Council's refusal to consider new evidence."); *Washington*, 806 F.3d at 1321 ("[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate.")).

Mr. Leach argues that the Appeals Council improperly "reaffirmed the ALJ's Second Decision without taking into account [the] District Court [Remand] Order, the evidence presented by the Plaintiff, or Plaintiff's request for an extension to submit specific exceptions." ECF Nos. 20 at 3; 24 at 8. Mr. Leach further argues that the Appeals Council denied his additional request for an extension of time as an arbitrary reason to dismiss his application and uphold the ALJ's decision and that the denial of his request "cast[s] doubt on the validity and fairness of the ALJ's determination." ECF No. 24 at 6, 8.

First, the contention that the Appeals Council did not take into account the Court Remand Order is directly contradicted by the record. The Appeals Council specifically found that the ALJ's decision complied with the Court Remand Order when declining to assume jurisdiction. R. 2443.

Next, Mr. Leach argues that the Appeals Council acted arbitrarily in denying his request for a second extension of time. ECF Nos. 20 at 3; 24 at 6, 8. On this point, the Court first notes that the Appeals Council granted Mr. Leach's first request for a 30-day extension of time to submit specific exceptions. R. 2443. Thereafter, Mr. Leach

19

was permitted to submit specific exceptions through October 1, 2021. *Id.* Mr. Leach did not, however, file anything until October 13, 2021, nearly two weeks after his new deadline, when he filed a second request for additional time. *Id.* At that time, Mr. Leach stated that he needed an additional extension due to his counsel's withdrawal from the case—however, the Court notes that Mr. Leach's counsel withdrew on March 11, 2021 (R. 2450), almost six months *before* the Appeals Council granted his first request for an extension of time. R. 2453. Moreover, the Appeals Council's letter granting Mr. Leach's first extension specifically stated, "We will not allow more time to send exceptions." *Id.* To the extent Mr. Leach argues that the Appeals Council demonstrated bias by denying his second extension of time or declining to assume jurisdiction, that argument fails because "an unfavorable judicial decision is not indicative of bias without other evidence of bias," and Mr. Leach does not point to any such evidence. *Meade*, 807 F. App'x at 945 (citing *Liteky*, 510 U.S. at 556). On the current record, without any explanation or citation to relevant legal authority by Mr. Leach, the Court cannot conclude that Mr. Leach is entitled to remand due to the denial of his second request for an extension of time.

Finally, Mr. Leach summarily argues that the Appeals Council did not consider "the evidence presented by the Plaintiff." ECF No. 20 at 3. There is no dispute that Mr. Leach was permitted to present evidence to the Appeals Council. *See Washington*, 806 F.3d at 1320 ("'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council.") (citing *Ingram*, 496 F.3d at 1261). Indeed, Mr. Leach did present evidence

to the Appeals Council which had not been submitted to the ALJ. R. 2444. Specifically, the Appeals Council acknowledged in its decision:

> [Mr. Leach] also submitted an investigative report from Palm Beach State College Office of Human Resources, dated June 6, 2016; medical records from Hand and Wrist Specialists of Palm Beaches dated May 5, 2020 to August 14, 2020; an imaging report from Midtown Imaging, dated October 26, 2020; and a letter from Mouvielle Caro Gracia, M.D., dated November 16, 2020. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

*Id.* However, Mr. Leach does not identify whether this, or some other evidence, is at issue herein.

If the evidence at issue is limited to those documents listed by the Appeals Council, the Court finds no error. Mr. Leach has neither argued nor shown that the evidence at issue is new, material, or chronologically relevant, such that the Appeals Council had a duty to consider it. *See Washington*, 806 F.3d at 1320. "New evidence is material if it is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Id.* (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). In declining to review the ALJ's decision, the Appeals Council found that the evidence submitted was not material. R. 2444 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.").[8] The Court has reviewed the evidence

---

[8] Although the Appeals Council did not attach the evidence to its decision, it is included in the record. *See* R. 3056–62 (Investigative Report dated 6/6/2016); R. 2588–2656 (Hand and Wrist Specialists of Palm Beaches records dated May 5, 2020, to

submitted to the Appeals Council and agrees. *See Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 837 (11th Cir. 2020) (finding the Appeals Council did not err when it declined to consider new evidence because the new evidence was not material). The Court finds no basis for remand because the new evidence presented was not material, and Plaintiff does not present any argument or authority to suggest otherwise.

To the extent that Mr. Leach argues some other evidence was not considered by the Appeals Council, that argument is undeveloped and must fail. Mr. Leach has not identified what, if any, evidence was presented to and not considered by the Appeals Council. Nor has he argued that any of that evidence is new, material, or chronologically relevant, such that the Appeals Council had a duty to consider it. Although the Court must liberally construe Mr. Leach's arguments, it cannot serve as *de facto* counsel and formulate the arguments on its own accord. *See Smith*, 2023 WL 361424, at *5. The Court finds that the Appeals Council did not err in declining to review the ALJ's decision or in declining to consider any evidence.

## **RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 20), **GRANT** Defendant's Motion for Summary Judgment (ECF No. 21), and **AFFIRM** the ALJ's decision.

---

August 14, 2020); R. 2460 (Midtown Imaging report dated 10/26/2020); R. 2458–59 (Letter from Dr. Mouvielle Caro Garcia dated 11/16/2020).

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE (5) DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 21st day of February 2024.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE